UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
RUBIEL ELIDIO CARDOSO-CHAVEZ,

                        Plaintiffs,

  -against-                                  COMPLAINT

                                                  23 CV

MORBARK, LLC and
RAYCO MANUFACTURING, INC.

                    Defendants.          JURY TRIAL DEMANDED

------------------------------------------------------------x

## COMPLAINT

Plaintiff, by the undersigned counsel, the Law Offices of Joseph Monaco, P.C., allege for the Complaint as follows:

### JURISDICTION AND VENUE

1. Defendant MORBARK, LLC ("MORBARK") is a citizen of Indiana as corporate entity organized under the laws of the State of Michigan with its principal place of business in Winn, Michigan.

2. Defendant RAYCO MANUFACTURING, INC. ("RAYCO") is a citizen of Ohio as corporate entity organized under the laws of the State of Indiana with its principal place of business in Wooster, Ohio.

3. At all times relevant herein, the plaintiff was domiciled and otherwise a citizen of the State of New York.

4. At all times relevant herein, the defendants marketed products in the United States and specifically in the State of New York.

5. At all times relevant herein, the defendants sold products in the United States and specifically in the State of New York.

6. At all times relevant herein, the defendants derived significant revenue from the sale of products in the United States and specifically in the State of New York.

7. The defendants sold the subject product to a New York based customer.

8. Defendants willingly availed itself to the New York marketplace.

9. Defendants has substantial contacts with the State of New York.

10. The defendants are subject to the jurisdiction of this Court.

11. Defendants and/or their predecessors designed the subject product.

12. Defendants and/or their predecessors manufactured the subject product.

13. Defendants and/or their predecessors sold the product.

14. Defendants and/or their predecessors placed the subject product into the stream of commerce.

15. Jurisdiction of this action is based on 28 U.S.C. § 1332.

16. Venue in this district is proper pursuant to 28 U.S.C. § 1391(a) because the events giving rise to the complaint occurred in the Eastern District of New York.

17. Plaintiff sustained injures that exceed the minimum jurisdictional limitations for this Court to exercise subject matter jurisdiction – including a traumatic amputation of the plaintiff's leg.

## **FACTS**

18. On or about July 16, 2021, plaintiff was employed by Traditional Tree Service, Inc. ("TTS") as a laborer.

19. At the time of the accident, TTS owned a stump Grinder contained a label that indicated it was manufactured by "RAYCO" and was designated as a Model RG40T and had a serial number of "0050217" and a Model Year 2017 (hereinafter the "Stump Grinder").

20. On or about July 16, 2021, the plaintiff's co-worker (the "operator") at TTS was operating the Stump Grinder.

21. On or about July 16, 2021, the plaintiff was working in the vicinity of the Stump Grinder to remove boulders and other debris from the work area.

22. While plaintiff was undertaking his work, the operator left the control station to observe plaintiff's work.

23. The grinding disc of the Stump Grinder continued to turn despite the absence of the operator at the machine's control station.

24. Unbeknownst to the plaintiff, the Stump Grinder moved forward towards the plaintiff until such time as the spinning grinding disc made contact with the plaintiff's pant let and pulled his leg into the spinning grinding disc.

25. On or about July 16, 2021, plaintiff was severely injured when his leg became entrapped in the moving grinding disc of the Stump Grinder.

26. Defendants designed the subject model Stump Grinder.

27. Defendants manufactured the subject Stump Grinder.

28. Defendants caused the subject Stump Grinder to be manufactured.

29. Defendants marketed the subject Stump Grinder.

30. Defendants sold the subject Stump Grinder.

31. Defendants sold the subject Stump Grinder to TTS and/or a retailer that sold the machine to TTS.

32. On or about September 30, 2021, Morbark and Rayco merged.

33. Defendant MORBARK is a successor and/or responsible for the acts and/or omissions of Defendant RAYCO.

## AS AND FOR A FIRST CLAIM FOR RELIEF
## STRICT PRODUCT LIABILTY

34. Plaintiff repeats and realleges all of the allegations contained in the preceding paragraphs of the complaint as though fully alleged herein.

35. Defendants are responsible for allegations of products liability and/or negligence relating to the product, including manufacturing defects, design, warnings, components, guarding and/or safety devices.

36. The subject Stump Grinder was defectively designed and/or manufactured.

37. Defendants are responsible for the Stump Grinder's defective design.

38. The Stump Grinder lacked proper warnings and/or caution signs.

39. The Defendants were responsible for the lack of warnings and/or caution signs.

40. Defendants are responsible in strict products liability for plaintiff's injuries.

41. Defendants was negligent with respect to the manufacture, sale, design, inspection, service, repair, maintenance, alteration, refurbishing and/or installation of the subject Stump Grinder.

42. Defendants breached express and implied warranties owed to the plaintiff with respect to the manufacture, sale, design, inspection, alteration, refurbishing and installation of the subject Stump Grinder.

43. The Stump Grinder was defective and unreasonably dangerous to the ultimate users or consumers when designed, tested, maintained, assembled, sourced, imported, distributed, manufactured, inspected, sold and placed into the stream of commerce by the defendants in the following ways:

   a. The subject Stump Grinder failed to operate, as an ordinary consumer/user would expect;

   b. The subject Stump Grinder was designed, assembled, sourced, imported, manufactured, distributed, sold and/or supplied in an unsafe, unreasonably dangerous and defective condition that the subject Stump Grinder lacked proper controls and safety devices to prevent inadvertent contact between the spinning grinder disc and people;

   c. The subject Stump Grinder was designed, assembled, sourced, imported, manufactured, distributed, sold and/or supplied in an unsafe, unreasonably dangerous and defective condition;

   d. The subject Stump Grinder was defective in its design, manufacture, assembly, and warnings, in that it failed to operate as marketed and advertised, and failed to alert users to the hazardous conditions described herein;

   e. The subject Stump Grinder was defective due to inadequate, or the absence of, warnings or instructions, including warning stickers, placards, or proper documentation to alert users regarding the hazardous conditions described herein.

   f. The Stump Grinder was improperly designed as it failed to provide protection to an operator of inadvertent contact between the spinning grinder disc and people in the vicinity of the machine.

  g.  The Stump Grinder lacked safety devices designed to protect against inadvertent contact between the spinning grinder disc and people in the vicinity of the machine.

  h.  The Stump Grinder lacked an operator presence sensing device to prevent operation/continued movement of the grinding disc in the event the operator is not present at the controls.

  i.  The Stump Grinder lacked warnings in the area of the hopper to alert people of the dangerousness of the Stump Grinder, including but not limited to the inadvertent contact between the spinning grinder disc and people in the vicinity of the machine, the need to keep the operator in control of the machine, the need to stop the machine whenever the operator left the control area and the importance of keeping people away from the machine during operation.

44. At the time of the subject incident, the subject Stump Grinder was in substantially the same condition as when designed, tested, maintained, assembled, sourced, imported, distributed, manufactured, inspected, sold and placed into the stream of commerce by the defendants.

45. For the reasons set forth above the subject Stump Grinder was unreasonably dangerous to foreseeable users including Plaintiff.

46. As a direct and proximate cause of the foregoing acts and/or omissions of the defendant, Plaintiff sustained serious and permanent bodily injuries resulting in pain and suffering, permanent impairment, disability, mental anguish, inconvenience, loss of the enjoyment of life, expense of medical care and treatment, expense of hospitalization, lost wages in the past and the loss of ability to earn wages in the future and/or otherwise in an amount that

exceeds the minimum jurisdictional requirements for this Court to exercise jurisdiction over this matter.

## AS AND FOR A SECOND CLAIM FOR RELIEF

47. Plaintiff repeats and realleges all of the allegations contained in the preceding paragraphs of the complaint as though fully alleged herein.

48. Prior to the accident, Defendants placed and/or permitted the Stump Grinder to be placed into operation/service without properly designed and/or functioning safety mechanism(s) and/or design(s).

49. Prior to the accident, Defendants placed and/or permitted the Stump Grinder to be placed into operation/service in an unsafe condition.

50. Defendants were responsible for the safe use of the Stump Grinder.

51. Defendants failed to properly warn and/or notify the customer that safety devices missing and/or not functioning properly on the Stump Grinder prior to the accident.

52. Defendants failed to properly warn and/or notify the customers and/or plaintiff of the dangers of the product.

53. Defendants knew or in the exercise of due care should have known that the subject Stump Grinder would be used without inspection in an unreasonably dangerous condition and would create a foreseeable risk of harm to users, including Plaintiff.

54. Defendants were under a duty to properly and adequately design, test, maintain, assemble, source, import, distribute, manufacture, inspect, sell, and distribute the subject Stump Grinder in a reasonably safe condition as not to present a danger to members of the general

public who reasonably and expectedly, under ordinary circumstances, would come into contact with it, including Plaintiff.

    55.    Defendants breached the duty owed to plaintiff by negligently designing, testing, maintaining, assembling, distributing, manufacturing, inspecting, selling, and distributing the subject Stump Grinder when it was not in a reasonably safe condition for foreseeable use, as follows:

    a.    The subject Stump Grinder failed to operate, as an ordinary consumer/user would expect;

    b.    The subject Stump Grinder was designed, assembled, sourced, imported, manufactured, distributed, sold and/or supplied in an unsafe, unreasonably dangerous and defective condition that the subject Stump Grinder lacked proper controls and safety devices to prevent inadvertent contact between the spinning grinder disc and people;

    c.    The subject Stump Grinder was designed, assembled, sourced, imported, manufactured, distributed, sold and/or supplied in an unsafe, unreasonably dangerous and defective condition;

    d.    The subject Stump Grinder was defective in its design, manufacture, assembly, and warnings, in that it failed to operate as marketed and advertised, and failed to alert users to the hazardous conditions described herein;

    e.    The subject Stump Grinder was defective due to inadequate, or the absence of, warnings or instructions, including warning stickers, placards, or proper documentation to alert users regarding the hazardous conditions described herein.

    f.    The Stump Grinder was improperly designed as it failed to provide protection to an operator of inadvertent contact between the spinning grinder disc and people in the vicinity of the machine.

    g.      The Stump Grinder lacked safety devices designed to protect against inadvertent contact between the spinning grinder disc and people in the vicinity of the machine.

    h.      The Stump Grinder lacked an operator presence sensing device to prevent operation/continued movement of the grinding disc in the event the operator is not present at the controls.

    i.      The Stump Grinder lacked warnings in the area of the hopper to alert people of the dangerousness of the Stump Grinder, including but not limited to the inadvertent contact between the spinning grinder disc and people in the vicinity of the machine, the need to keep the operator in control of the machine, the need to stop the machine whenever the operator left the control area and the importance of keeping people away from the machine during operation.

56.    Defendants were negligent.

57.    Plaintiff's severe injuries were caused by and/or a result of the foregoing.

58.    As a direct and proximate cause of the foregoing acts and/or omissions of the defendant, Plaintiff sustained serious and permanent bodily injuries resulting in pain and suffering, permanent impairment, disability, mental anguish, inconvenience, loss of the enjoyment of life, expense of medical care and treatment, expense of hospitalization, lost wages in the past and the loss of ability to earn wages in the future and/or otherwise in an amount that exceeds the minimum jurisdictional requirements for this Court to exercise jurisdiction over this matter.

**AS AND FOR A THIRD CLAIM FOR RELIEF**
**BREACH OF EXPRESS WARRANTY**

59.    Plaintiff realleges and readopts the allegations set forth in the preceding

paragraphs of the complaint as if fully set forth herein.

60. Defendants designed, manufactured, assembled, distributed, inspected, tested, and/or sold the Stump Grinder.

61. Defendants expressly warranted that the Stump Grinder was safe for ordinary use when used in compliance with the instructions provided.

62. Defendant's affirmations regarding the safety of its product formed a basis of the bargain for Plaintiff without which the Plaintiff would not have purchased the Stump Grinder.

63. The Stump Grinder did not conform to the Defendants' affirmations regarding safety.

64. As a direct and proximate result of Defendant's breach of express warranties, Plaintiff suffered severely painful and disfiguring injuries to Plaintiff's body, and resulting pain and suffering, disability, mental anguish, embarrassment and humiliation, loss of capacity for the enjoyment of life, and medical and nursing care and treatment; the injuries are either permanent or continuing in nature and Plaintiff will suffer the losses and impairment in the future.

## AS AND FOR A FOURTH CLAIM FOR RELIEF
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

65. Plaintiff realleges and readopts the allegations set forth in the preceding paragraphs of the complaint as if fully set forth herein.

66. Defendants at all relevant times designed, manufactured, assembled, tested, inspected, distributed, marketed and/or sold the Stump Grinder.

67. Defendants impliedly warranted that the Stump Grinder was merchantable, fit for the ordinary purpose for which it was sold or used, was of fair average quality as to pass without objection in the trade, and conformed to Defendant's own affirmations regarding the Stump Grinder's safety features and overall safe condition.

68.     Defendants breached their implied warranty of merchantability, as the product did not conform to the Defendant's affirmations regarding the safety features and overall safe condition of the Stump Grinder, the Stump Grinder was not fit for the ordinary purpose for which it was sold or used, and was not of fair average quality so as to pass without objection in the trade.

69.     As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff suffered severely painful and disfiguring injuries to Plaintiff's body, and resulting pain and suffering, disability, mental anguish, embarrassment and humiliation, loss of capacity for the enjoyment of life, and medical and nursing care and treatment; the injuries are either permanent or continuing in nature and Plaintiff will suffer the losses and impairment in the future.

### AS AND FOR A FIFTH CLAIM FOR RELIEF
### BREACH OF IMPLIED WARRANTY
### OF FITNESS FOR A PARTICULAR PURPOSE

70.     Plaintiff realleges and readopts the allegations set forth in the preceding paragraphs of the complaint as if fully set forth herein.

71.     Defendants at all relevant times designed, manufactured, assembled, tested, inspected, distributed, marketed, and/or sold the Stump Grinder.

72.     In selling the Stump Grinder, Defendants, through their agents, servants, employees, and apparent agents, acting within the scope of their employment, authority, or apparent authority, made representations and promotions concerning the particular purpose to which Plaintiff's employer, plaintiff and co-workers would put the Stump Grinder to use and knew or should have known of the particular purpose to which the Plaintiff's employer, plaintiff and co-workers would put the product to use.  Defendant impliedly warranted that the product

would be fit for such particular purpose.

73. Defendants breached its implied warranty of fitness for a particular purpose, as the Stump Grinder did not conform to the Defendant's affirmations regarding its product being fit for such particular purpose. The Stump Grinder's malfunctioning safety features and overall unsafe condition rendered it unfit for that purpose.

74. As a direct and proximate result of Defendant's breach of the implied warranty of fitness for a particular purpose, Plaintiff suffered severely painful and disfiguring injuries, and resulting pain and suffering, disability, mental anguish, embarrassment and humiliation, loss of capacity for the enjoyment of life, and medical and nursing care and treatment; the injuries are either permanent or continuing in nature and Plaintiff will suffer the losses and impairment in the future.

### AS AND FOR A SIXTH CLAIM FOR RELIEF
### FAILURE TO WARN

75. Plaintiff realleges and readopts the allegations set forth in the preceding paragraphs of the complaint as if fully set forth herein.

76. Defendants at all relevant times designed, manufactured, assembled, tested, inspected, distributed, marketed, and/or sold the Stump Grinder.

77. On the date of the accident, Plaintiff and/or his co-workers used the Stump Grinder in the manner intended and/or foreseeably intended, when the Stump Grinder failed and/or otherwise caused injury to the Plaintiff.

78. Upon information and belief, the Stump Grinder was manufactured in a defective manner, defectively designed and/or failed to have adequate and proper warnings or instructions; it was not safe to be used for the purposes intended; and/or it was inherently and/or unreasonably dangerous.

79. Defendants knew or should have known of the dangerous nature of the Stump Grinder by virtue of their business, and/or knew or should have known of the need to provide adequate warnings concerning the use of the Stump Grinder.

80. Defendants had a duty to provide reasonable warning of the danger involved in the use of the Stump Grinder and failed to provide the public, including the Plaintiff, notice of the danger involved.

81. As a direct and proximate result of the foregoing, Plaintiff suffered severely painful and disfiguring injuries to Plaintiff's body, and resulting pain and suffering, disability, mental anguish, embarrassment and humiliation, loss of capacity for the enjoyment of life, and medical and nursing care and treatment; the injuries are either permanent or continuing in nature and Plaintiff will suffer the losses and impairment in the future.

## AS AND FOR A SEVENTH CLAIM FOR RELIEF - NEGLIGENCE

82. Plaintiff realleges and readopts the allegations set forth in the preceding paragraphs of the complaint as if fully set forth herein.

83. Defendants had a duty of reasonable care to design, manufacture, inspect, test, market, distribute and/or sell non-defective Stump Grinders that are reasonably safe for their intended use. Defendants also had a duty to adequately warn of dangers presented by the product's design. These duties applied to the subject Stump Grinder.

84. Defendants knew, or in the existence of ordinary care, should have known, that the subject Stump Grinder was defective and unreasonably dangerous to those persons likely to use the product for the purpose and in the manner for which it was intended to be used.

85. Defendants knew or in the exercise of ordinary care should have known of the means of designing, manufacturing, and marketing the subject Stump Grinder such that the type

of incident and resulting injuries and damages as described herein would have been prevented. Defendants had actual or constructive knowledge of the means of designing a Stump Grinder that would not be inadequate and dangerous and notwithstanding this knowledge, Defendants failed to adequately design, equip and/or manufacture the subject Stump Grinder.

86. Defendants negligently failed to give adequate or proper warnings or instructions and failed to make appropriate post-marketing efforts to prevent known incidents, such as the one included herein.

87. Defendants owned Plaintiff, as well as the public at large, the duty of reasonable care in designing, manufacturing, testing, inspecting, and marketing the subject Stump Grinder.

88. Defendants failed to prudently design, manufacture, test, inspect, market, and sell the subject Stump Grinder and failed to include a reasonable and safer alternative to the subject defective condition.

89. Defendants failed to properly and appropriately install, maintain, repair, service and inspect the subject Stump Grinder.

90. As a direct and proximate result of the Defendant's negligence, Plaintiff suffered severely painful and disfiguring injuries to Plaintiff's body, and resulting pain and suffering, disability, mental anguish, embarrassment and humiliation, loss of capacity for the enjoyment of life, and medical and nursing care and treatment; the injuries are either permanent or continuing in nature and Plaintiff will suffer the losses and impairment in the future.

WHEREFORE, plaintiff demands judgment against the defendants, together with interest and costs of suit.

WHEREFORE, the Plaintiff demands judgment against the defendants in a monetary sum far exceeding the jurisdictional limitations of this court (including but not limited to the

minimum monetary prerequisite for diversity jurisdiction) including not limited to compensatory damages, together with interest, costs and disbursements as provided by law.

    <u>Plaintiff demands a trial by jury on all counts.</u>

Dated:    New York, New York
            June 27, 2023

                          Respectfully submitted;

                          THE LAW OFFICES OF
                          JOSEPH MONACO
                          By: *Joseph D. Monaco III*
                          192 Lexington Avenue - Suite 802
                          New York, New York 10016
                          212-486-4244

                          (mailing address)
                          800 Kinderkamack Road
                          Suite 202 South
                          Oradell, New Jersey 07649
                          jmonaco@monaco-law.com